## WILEY v. CARTER.

**Fraudulent Conveyance:** EXCUSED BY IMBECILITY: RECOVERY. Plaintiff's intestate executed to defendant a promissory note without consideration, and secured by a chattel mortgage on his property, for the purpose of defrauding his creditors, but the evidence shows (GRANGER, J., not concurring) that he was of such weak mind, and so unduly influenced by defendant, that he was not chargeable in law with the ordinary consequences of such fraud. Defendant assigned the papers to M., to whom the maker paid the note in part, and he with defendant and two others as sureties made a new note to M. for the balance. This note was put in judgment, and defendant and the two other sureties paid the judgment, each paying one-third. Plaintiff's intestate paid to each of the two other sureties the amount paid by him, and took from them an assignment of any claim they might have on account of such payment. *Held* that the plaintiff was entitled to recover such amounts of defendant.

*Appeal from Clarke District Court.*—HON. R. C. HENRY, Judge.

FILED, MAY 29, 1889.

THE plaintiff is the administrator of the estate of B. O. Davidson, deceased. In February, 1875, B. O. Davidson made to the defendant his note for three hundred dollars, and secured the payment thereof by a chattel mortgage. The note and mortgage were afterwards transferred to one Daniel Miller. Davidson paid to Miller on the note, so that on the eleventh of July, 1877, there remained due one hundred and forty dollars, and for this amount Davidson (plaintiff's intestate), Carter (the defendant), J. F. Wells and Isaac Wiant

Wiley v. Carter.

gave to Miller their joint note. This note was afterwards put in judgment, and paid by Carter, Wells and Wiant, each paying one-third. Davidson afterwards paid to Wells and Wiant the amounts paid by them, viz., $56.80 each, and took from them an assignment of any claim they had in consequence of the payments made by them, and it is to recover the amounts thus paid that this suit is brought. Pending this suit B. O. Davidson deceased, and the administrator is substituted as party plaintiff. The averments of the petition under which plaintiff seeks to recover are that in a suit pending against Davidson in his lifetime by the administrator of one Morrison, deceased, he settled the suit by payment, and that thereafter another suit was instituted for the same claim ; that he was unable to procure testimony to prove his payment, and that to place his property beyond the reach of execution he gave to the defendant in this suit the three-hundred-dollar note and mortgage above referred to; that there was no consideration whatever for the note; and that it was given under an express understanding that it was not to be paid. It is further alleged that the plaintiff's intestate (Davidson) was an uneducated man, and had for many years prior thereto been subject to epileptic fits, and was in consequence thereof of weak mind, and easy of influence; and that the defendant, knowing this, wrongfully persuaded him to make to him the note and mortgage, and that he made the same only in consequence of such undue influence and persuasion. The defendant denies the accusation of fraud or undue influence, and avers that he gave, as a consideration for the three-hundred-dollar note, two hundred and eighty dollars in money to plaintiff's intestate. Other facts are set out, both in petition and answer, but the foregoing are all that are essential to a proper disposition of the case.

*M. L. Temple*, for appellant.

*James Rice*, for appellee.

GRANGER, J.—It will be observed that the case involves no disputed question of law, but simply questions of fact, and we accept the propositions of appellant in argument as to the facts necessary to be established, and think them correctly stated. They are: "*First*, that the making of the note for three hundred dollars, and the chattel mortgage to secure the same, was a fraudulent conveyance, for the purpose of hindering and delaying creditors, without consideration in fact; *second*, that Davidson was of weak mind, capable of being and was overreached by Carter, so far that it excused his guilt in the transaction, and rendered him incapable of being or becoming *pari delicto*."

Aside from the parties directly interested in cases involving only questions of fact, there is no desire for extended discussions or comments by the court, and we think it not important to attempt such a discussion in this case. The abstract contains seventy-eight closely printed pages of testimony, and an attempt to fairly present even the facts in detail, as established, would consume more space and time than the effort would justify. Hence we cannot favor what we understand to be the pleasure of counsel in this respect. The testimony has been reviewed by the members of the court separately, and each has by himself noted his conclusion. A majority of the court believe from such examination that the facts as above indicated are sustained by the testimony. The writer of this opinion has a different view, and believes that, while there is much testimony favoring the conclusions of the majority, it is not of that clear or satisfactory character to justify the judgment entered below. That B. O. Davidson was a man long afflicted with epileptic convulsions is unquestioned, and that they seriously affected his mind just prior to and after the attack is equally true. The testimony is conflicting as to his mental capacity at other times, but there is much testimony—and from those most likely to know—that he was generally easily influenced. He seems to have confided much in the defendant, and from

the defendant's own testimony he seems to have been disposed to assist him when he could. Both Davidson and his wife were unable to read or write. The neighbors who had known him for years are divided in their judgments as to his capacity for resisting the influence of such men as the defendant, or as to his being easily influenced.

The testimony as to the details of the transaction in giving the note and mortgage is very conflicting. If the money was ever paid to Davidson, it was paid on the public square in town, and no one else present, and before the mortgage and note were given. Quite a number of witnesses testify that Davidson admitted to them that he received the money. It seems that after the note was given there was something of a talk or rumor that the mortgage was given to cover up the property, and it was about this time that the questions were asked of Davidson, and he stated that he did receive the money. If it was true that he had given the mortgage as he claimed, then it could, of course, be expected that he would make such statements, as no truth would harmonize with the wrong. A falsehood would be its only support. Davidson's testimony is to the effect that, after the wrongful pledging of the property, he was kept in constant fear by defendant in his statements to him that they had committed a penitentiary offense, and that he was in constant fear of falling into the hands of the law, and that he was actuated by these fears in doing what he did. Davidson paid to Miller, before the one hundred and forty-dollar note was given, two hundred and fifty dollars, and he says that defendant often agreed to pay it back, and often told him he should receive back every cent, and as to much of this Davidson has considerable support in evidence, but mainly from members of his own family. Defendant denies the testimony of statements as to the penitentiary offense, or to pay back the money, and in some respects he receives support from other evidence. One S. P. Davidson, who gave testimony for the defendant which, if true, would be conclusive against the

plaintiff, is so conclusively impeached that his testimony is of no avail. The assigning of the note and mortgage to Miller, and the giving of the one hundred and forty-dollar note for the balance, are questions on which considerable testimony is taken, and as to the assignment of the note Davidson claims that defendant proposed that it be done at a time when there was talk of "trying the right of property," by which we understand that the validity of the mortgage was to be tested, and the defendant thought it would aid in the concealment. Defendant's theory is that Miller wanted to borrow money, and he had none, and, understanding that Davidson would pay the note soon, he let him have the note in lieu of the money. It is a little difficult to see how the transfer of the note would aid Miller in getting the money sooner than to allow the payment to defendant, and then pass it to Miller. To say the least, the conduct of Miller is clouded with suspicion as to some of the transactions in the case, and it is urged that he was aiding defendant in his effort. As to the giving of the one hundred and forty-dollar note, there is much testimony contradicting the defendant, but he insists that he only signed as surety for Davidson. He seems to have taken a very active part in the management of the affair, and there is considerable testimony tending to show that he expected to pay the note. On the whole, the testimony is such as to satisfy a majority of the court that the facts are against the defendant, and the judgment below is                     AFFIRMED.